WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louis Mondelli,<br><br>           Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>           Defendant. | No. CV-14-00425-PHX-JAT<br><br>**ORDER** |

Louis Mondelli ("Plaintiff") appeals the Acting Commissioner of Social Security's ("Commissioner") denial of disability benefits. (Doc. 17.)   The Court now rules on that appeal.

**I.     BACKGROUND**

   **A.     PROCEDURAL BACKGROUND**

On March 3, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (R. at 167, 197-203.)   Plaintiff also filed a Title XVI application for supplemental social security income on March 8, 2010. (R. at 204-12.)   In both applications, Plaintiff alleged a disability onset date of February 17, 2009. (R. at 197, 204.)   The Commissioner denied Plaintiff's application on July 19, 2010. (R. at 80.)   The Commissioner also denied Plaintiff's application upon reconsideration on October 28, 2010. (R. at 105.)

On March 5, 2012, the Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claims. (R. at 22.)   The ALJ found Plaintiff was not disabled. (R. at 33.)

Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review. (R. at 1-4.) Plaintiff filed an appeal with this Court on March 4, 2014. (Doc. 1.)

Plaintiff claims that the ALJ erroneously (1) discredited the opinions of Plaintiff's treating physicians, (2) discredited Plaintiff's testimony, and (3) discredited third-party reports. (Doc. 17 at 11-27.)

### B. MEDICAL BACKGROUND

The Court will briefly summarize Plaintiff's medical history, which is thoroughly recounted in the administrative record. Plaintiff's medical history dates back to his shattered right heel and left knee surgery resulting from a car accident in 1982. (R. at 351, 426, 536.) On April 2, 2009, Plaintiff was admitted to Wickenburg Community Hospital following an ATV accident. (R. at 337.) Plaintiff was discharged after CT scans, x-rays, and MRIs were all negative for acute injury; however, these tests revealed mild levoscoliosis and mild multilevel degenerative disc disease. (R. at 330, 336.) Plaintiff began seeing Dr. Melde, a primary care physician, on April 16, 2009. (R. at 406.) In October 2009, x-rays of Plaintiff's right heel and left knee indicated posttraumatic osteoarthropathy in both. (R. at 426-27.) Plaintiff was prescribed Percocet to help with the pain. (R. at 397). In November 2009, Dr. Melde noted Plaintiff complained of nausea, throwing up blood, and was drinking heavily. (R. at 396.)

In November 2009, Dr. Melde referred Plaintiff to Dr. Elison, a podiatrist. (R. at 345.) Dr. Elison diagnosed Plaintiff with degenerative joint disease of the ankle, nerve pain, neuropathy, and a foot sprain. (*Id.*) Dr. Melde also referred Plaintiff to Dr. Cercek, an orthopedic surgeon. (R. at 351.) Dr. Cercek noted that Plaintiff had progressively worsening knee swelling and pain since a 1980 car accident and diagnosed Plaintiff with severe posttraumatic arthritis of the left knee. (*Id.*)

In February 2010, Dr. Melde completed a medical assessment of Plaintiff's ability to do work-related activities. (R. at 347-48.) In the questionnaire, Dr. Melde opined that Plaintiff could not work full-time on a regular and consistent basis due to knee and hip pain. (R. at 347.) Dr. Melde opined that Plaintiff could sit for six hours in an eight-hour

workday and stand or walk for less than two hours in an eight-hour workday. (R. at 347.)

Dr. Cercek performed a left knee replacement on Plaintiff May 14, 2010. (R. at 443.) Following surgery, Plaintiff made "very good progress" in physical therapy. (R. at 453-54.) Plaintiff, however, did not reach his therapy goal of regaining full left knee strength and stability. (*Id.*) Plaintiff had continued post-surgery knee pain and required the use of a cane because he had an uneven gait. (R. at 502.)

Plaintiff reported back pain beginning in approximately July 2010. (R. at 499, 517.) During his therapy sessions, Plaintiff's reports of back pain varied from severe to nonexistent. (R. at 507-15.) On one occasion, Plaintiff reported that he had very little pain and that he would be moving appliances that day. (R. at 508.) On another occasion, Plaintiff reported that he had been doing painting around the house. (R. at 510.) On August 30, 2010, Plaintiff reported to Dr. Cercek that he did not have any pain but had buckling of his knee while walking and he felt that his left leg was longer than his right leg. (R. at 502.) In December 2010, Dr. Melde referred Plaintiff to Dr. Feldman, a pain management specialist. (R. at 529-30). Janet Orozco, Dr. Feldman's physician assistant, diagnosed Plaintiff with a lumbar radiculopathy and degenerative disc disease with evidence of disc bulge and facet hypertrophy. (R. at 529.)

On or around April 2011, Plaintiff developed the inability to fully extend his left knee, and on May 4, 2011, Dr. Cercek performed surgery to repair Plaintiff's extensor mechanism. (R. at 536, 539.) Three days later, Plaintiff was discharged from the hospital with a prescription for Oxycodone and an outpatient physical therapy plan. (R. at 539-40.) From May 2011 through February 2012, Dr. Melde regularly prescribed Plaintiff Oxycodone for chronic pain Plaintiff reported in his back and left knee. (R. at 543-52.) In that time period, Plaintiff reported that he had trouble walking, he suffered from insomnia, he was sick, and he suffered from pain constantly throughout the day. (R. at 545, 546, 548.) Plaintiff told Dr. Feldman that his back pain measured at an eight out of ten and that his pain could only be alleviated by lying down. (R. at 638-39.) Dr. Feldman recommended lumbar spine medial branch blocks to Plaintiff in attempt to help alleviate

Plaintiff's pain. (R. at 638.)

In February 2012, Dr. Cercek completed a medical assessment of Plaintiff's ability to do work-related activities. (R. at 541-42.) Dr. Cercek opined that Plaintiff was unable to work full time. (*Id.*) According to Dr. Cercek, Plaintiff had the ability to sit for four hours in an eight-hour workday and stand or walk for two hours in an eight-hour workday. (*Id.*) Dr. Melde completed the same medical assessment as Dr. Cercek and also opined that Plaintiff is unable to work full time. (R. at 553-54.) Dr. Melde, however, opined that Plaintiff had the ability to sit for less than two hours in an eight-hour workday and stand or walk for less than two hours in an eight-hour workday. (*Id.*)

In addition to Plaintiff's treating physicians, two state agency physicians examined Plaintiff's medical record. On July 19, 2010, Dr. Goerss completed a medical assessment of Plaintiff's ability to work and concluded that Plaintiff is not disabled. (R. at 79.) On October 28, 2010, Dr. Goodrich completed the same medical assessment and also concluded that Plaintiff is not disabled. (R. at 118). Both doctors opined that Plaintiff was able to sit for about six hours in an eight-hour workday and stand or walk for about six hours in an eight-hour workday. (R. at 76, 115.)

## II. DISABILITY

### A. DEFINITION OF DISABILITY

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. FIVE-STEP EVALUATION PROCESS

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ makes a finding regarding the claimant's "residual functional capacity based on the relevant medical and other evidence in [the]

case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most he can still do despite all of his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares his "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, then the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(1). In making this determination, the ALJ considers a claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In evaluating a claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p, 2006 WL 2329939, at *3–4 (Aug. 9, 2006).

### C. ALJ'S EVALUATION UNDER THE FIVE-STEP PROCESS

The ALJ applied the five-step sequential evaluation process using Plaintiff's alleged onset date of February 17, 2009. (R. at 22). At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 17, 2009. (R. at 24). The ALJ then found Plaintiff has the following severe impairments:

> obesity; hypertension (stable); status post left total knee replacement (5/2010) and repair of extensor mechanism (5/2011); lumbar degenerative disc disease; and status post shattered heel (1982), with resulting degenerative joint disease of the right foot (20 C.F.R. 404.1520(c) and 416.920(c)).

(*Id.*)  At step three, the ALJ noted that none of these impairments, whether considered individually or in the aggregate, met or medically equaled one of the listed impairments that would result in a finding of disability. (R. at 25.)  The ALJ determined that Plaintiff's residual functional capacity was the ability to:

> . . . perform sedentary work . . . except for the following limitations: the claimant is capable occasionally pushing and pulling with the right foot; and occasionally operating foot controls with the right foot.  He is capable of frequently climbing ramps and stairs and balancing with the use of a hand held assistive device; occasionally crouching, kneeling, and crawling; and precluded from climbing ladders, ropes, and/or scaffolds.  The claimant is capable of jobs which can be performed while using a hand held assistive device required for uneven terrain or prolonged ambulation, and at all times when standing.  The claimant is to avoid concentrated exposure to extreme cold, wetness and humidity, use of moving machinery, and exposure to unprotected heights.

(R. at 25-26).  Under step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as an auto mechanic. (R. at 31.)  Under step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 32.)  The ALJ concluded that Plaintiff was not disabled. (R. at 33.)

### D.   STANDARD OF REVIEW

A district court:

> may set aside a denial of disability benefits only if it is not

- 7 -

> supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III. ANALYSIS

Plaintiff appeals the ALJ's decision for three reasons. Plaintiff argues that the ALJ erroneously (1) discredited the opinions of Plaintiff's treating physicians Dr. Melde and Dr. Cercek, (2) discredited Plaintiff's testimony, and (3) discredited third-party reports. (Doc. 17 at 11-27).

### A.   THE OPINIONS OF DR. MELDE AND DR. CERCEK

#### 1.   LEGAL STANDARD

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20

1  C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating
2  physician's opinion "is not well-supported" or "is inconsistent with other substantial
3  evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at
4  631.

### a. SUBSTANTIAL EVIDENCE

Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### b. TREATING PHYSICIAN'S OPINION

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1)

the length of the relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion with his specialty. 20 C.F.R. § 404.1527(c).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830). Alternatively, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Thomas*, 278 F.3d at 957).

### c. OPINION ON DISABILITY

Finally, "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Thus, even if a treating physician's opinion is controlling, it does not necessarily lead to a finding of disability. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (rejecting a treating physician's opinion of disability).

### 2. DISCUSSION

Plaintiff argues that the ALJ committed legal error in discrediting the opinions of Dr. Melde and Dr. Cercek, two of Plaintiff's treating physicians. (Doc. 17 at 23-24.) Specifically, Plaintiff argues that the ALJ erroneously discredited Plaintiff's treating

1  physicians' opinions that Plaintiff "could not work full-time due to increasing physician
2  limitations, particularly in his ability to sit/stand/walk." (R. at 347-48, 541-42, 553-54.)
3  Plaintiff asserts that the opinions of Dr. Melde and Dr. Cercek should be given
4  controlling weight. (Doc. 17 at 24.)  In this case, the ALJ did not give significant weight
5  to the opinions of Dr. Melde and Dr. Cercek because: (1) both doctors relied heavily
6  upon Plaintiff's subjective complaints, (2) both doctors' conclusions were inconsistent
7  with their physical examinations, and (3) neither opinions were supported by the majority
8  of the record. (R. at 30-31.)

9  Neither Dr. Melde nor Dr. Cercek included any additional information or made
10 any notes explaining their conclusions on the medical assessments of Plaintiff's ability to
11 do work related activities. (R. at 347-48, 541-42, 553-54.)  Dr. Melde and Dr. Cercek
12 both relied heavily upon Plaintiff's subjective complaints in diagnosing and treating
13 Plaintiff. (R. at 502, 531, 533, 546, 550-52, 626.)  The ALJ determined that Plaintiff's
14 subjective complaints were not entirely credible. (R. at 28-29.)  Thus, it was reasonable
15 for the ALJ to discredit the opinions of Dr. Melde and Dr. Cercek that were based on
16 Plaintiff's subjective complaints. *See Bray*, 554 F.3d at 1228.

17 Additionally, a discrepancy between treatment notes and a medical opinion is "a
18 clear and convincing reason for not relying on the doctor's opinion regarding" a
19 claimant's limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The
20 ALJ also discounted the opinions of Dr. Melde and Dr. Cercek because they were
21 inconsistent with their own physical examinations. (R. at 30) (citing R. at 541-52).  The
22 ALJ noted that Dr. Melde failed to define a "moderately severe" restriction and most of
23 the visits were for chronic pain management rather than acute problems. (R. at 30) (citing
24 R. at 543-52).

25 Furthermore, the ALJ noted that neither Dr. Melde nor Dr. Cercek's opinions were
26 supported by the majority of the record. (R. at 30-31.)  The ALJ explained that Dr.
27 Melde's conclusions contradict his own treatment notes. (R. at 30) (citing R. at 543-52).
28 The ALJ noted that Dr. Melde's conclusions would "render the claimant bedridden and

with significant muscle atrophy, which are not supported by the medical evidence of the record." (R. at 30.) The ALJ explained that Dr. Cercek's conclusions contradict both his own treatment notes, and the overall record. (R. at 31) (citing R. at 350-57, 501-02, 527-35, 626-37). Within the notes cited by the ALJ, Dr. Cercek noted things like Plaintiff's "[n]eck has full, stable, painfree range of motion." (R. at 626.) Accordingly, the ALJ provided sufficient reasons for her conclusion and did not commit legal error in discounting the opinions of Dr. Melde and Dr. Cercek.

## B. PLAINTIFF'S TESTIMONY

Plaintiff argues that the ALJ failed to provide specific findings showing clear and convincing reasons for discrediting Plaintiff's testimony. (Doc. 17 at 11.) Specifically, Plaintiff argues that the ALJ erroneously discredited Plaintiff's left knee, right foot, and back symptoms and limitations. (*Id.*) (citing R. at 26-29). The ALJ gave the following reasons for discrediting Plaintiff's testimony: (1) Plaintiff's alleged symptoms and reported daily activities are not supported by the medical record, (2) Plaintiff was "let go" from his previous job for non-medical reasons, and (3) Plaintiff applied for and received unemployment benefits, certifying that he is capable of sustaining full-time employment. (R. at 28-29.)

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

> First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at

> 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))
>
> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8-9 (D. Ariz. Feb. 10, 2014).

While an ALJ may not reject a claimant's subjective complaints solely because of a lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001), the lack of such evidence may support the ALJ's finding that a claimant is not credible. *See Batson*, 359 F.3d at 1197.

In this case, the ALJ did not make specific findings supported by the record that provide clear and convincing reasons explaining why Plaintiff's testimony is not credible. In the ALJ's analysis explaining why Plaintiff's testimony is not credible, she does not

1  refer to specific findings that support her conclusion.  The ALJ explains that "claimant's
2  reported activities of daily living are inconsistent with his complaints in the record," but
3  does not describe what those daily activities are. (R. at 28.)   The ALJ explains that
4  "[p]hyisical examination findings consistently indicated normal, nonantalgic gait" but
5  does not point to any specific examinations supporting that conclusion. (R. at 29.)

6  Although the ALJ specifically cites Plaintiff's application for unemployment benefits as a reason to discredit Plaintiff's testimony, that alone is not enough to discredit Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1161-62.  Although the receipt of unemployment benefits can undermine a claimant's allegation that he is unable to work full time, the record must show that claimant made himself available for full-time work. *Id.* at 1162.  Although the ALJ has cited to Plaintiff's unemployment payments, those payments do not establish that Plaintiff has made himself available for full-time work. (R. at 29) (citing R. at 232-33).  The ALJ erred in discrediting Plaintiff's testimony without making specific findings supported by the record.

15  When an ALJ commits legal error, "harmless error principles apply." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "An ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination. In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." *Palmer v. Colvin*, No. CV-12-01786-PHX-JAT, 2013 WL 3930231, at *8 (D. Ariz. July 30, 2013) (citing *Molina*, 674 F.3d at 1115 (quotation and citations omitted)).  If an error is not harmless, the case must be either remanded or benefits must be awarded. *See id.*

23  The ALJ's error is not harmless.  Plaintiff's testimony is not inconsequential to the ultimate determination of disability.  The ALJ rejected Dr. Melde's opinion because much of it was determined upon Plaintiff's subjective report of symptoms. (R. at 30.) Additionally, the ALJ gave little weight to Dr. Cercek's opinion because it was also determined upon Plaintiff's subjective report of symptoms. (R. at 30-31.)  Plaintiff's credibility affects whether Plaintiff's testimony is discredited as well as to whether the

opinions of Plaintiff's treating physicians are discredited. Because Plaintiff's testimony is not inconsequential to the ultimate determination of disability, the ALJ's error is not harmless.

### C. THIRD-PARTY REPORTS

Plaintiff argues that the ALJ erroneously discredited third-party reports. (Doc. 17 at 23.) Specifically, Plaintiff claims that the ALJ erroneously discredited lay witness statements made by Plaintiff's mother, sister, and girlfriend and did not provide "germane" reasons for doing so. (*Id.*) The ALJ discredited these third-party reports because of their "inconsistency with the objective medical evidence of record." (R. at 31.)

"Lay testimony as to a claimant's symptoms is competent evidence which the Secretary must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)) (internal citations omitted). Examples of legitimate reasons for disregarding lay testimony include inconsistency with medical sources and close relationships with the claimant. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ cited inconsistencies between the record and the opinions of Plaintiff's family members. The ALJ referred to evidence such as "pain has been well-controlled" earlier in her opinion that contradicts statements made by Plaintiff's family members. (R. at 27.) The ALJ has showed that physical examinations by Plaintiff's doctors differ from the opinions of Plaintiff's family members. (R. at 27, 31.) These inconsistencies qualify as germane reasons that properly discredit the opinions of Plaintiff's family members; thus, the ALJ did not erroneously discredit third-party reports.

Even if the ALJ committed error in discrediting the statements made by Plaintiff's family members, that error was harmless. As mentioned above, a harmless error is made when the "ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115. (citation omitted). The ALJ explicitly said "these statements, even if fully credible,

do not persuade the undersigned that the claimant is incapable of sustained gainful employment." (R. at 31.)  Third-party reports were inconsequential to the ALJ's ultimate determination as to whether Plaintiff was disabled.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that this case is reversed and remanded to the Commissioner for further proceedings consistent with this Order.  The Clerk of the Court shall enter judgment.

Dated this 22nd day of July, 2015.

James A. Teilborg
Senior United States District Judge